*ALBANY,*
*Feb. 1828.*

*Cole*
*v.*
*Thayer.*

---

## Cole *against* Thayer.

Debt for $250, upon the 2d section of the *habeas corpus* act, (1 R. L. 354,) for refusing, on demand, to deliver a copy of the warrant of commitment, under which the plaintiff was held in the custody of the defendant. The declaration charged that he was a colonel in the service of the United States, having the command of the military post at West Point; and that, as such, he issued the warrant to a subaltern, against the plaintiff, without any charge of treason or felony expressed in it.

*Neither the original habeas corpus act, (1 R. L. 354, s. 2,) imposing a penalty for not delivering a copy of a war rant of commitment or detainer, nor the amendatory act, (sess. 41, ch. 277,) so far as it respects that penalty,* extend to a commitment or detainer under the warrant of a military officer *for a military* offence.

*Semb.* In this respect, the two statutes are confined to warrants, or process of commitment, or detainer by the civil magistrate, issued, or purporting to be issued, for a criminal or supposed criminal offence

Demurrer and joinder; upon which one question was, whether the case was either within the section of *the original statute to prevent unjust imprisonment by securing the benefit of the writ of *habeas corpus*, or was brought within that section by the amendatory act of April 21st, 1818, (sess. 41, ch. 277.)

*M'Kissock*, in support of the demurrer, said, the act was penal, and the plaintiff must bring himself clearly within its letter, or he could not maintain his action. (1 Bl. Com. 88, 9; 2 Bl. Rep. 1226.)

The counsel commented upon the statutes, and denied that the plantiff's case was provided for by either. He relied on *Huntley* v. *Luscombe*, (2 B. & P. 530,) as in point, and cited 2 Hawk. B. 2, ch. 16, ss. 3 and 13; 1 Burn. J. 381, to show that the original statute extended only to criminal commitments. This would be seen from the history and object of the statute. (3 Bl. Com. 131 to 136.)

*I. Hamilton*, contra.

*Curia, per* SUTHERLAND, J.   I am inclined to think that this is not a case to which the penalty given by the second section of the *habeas corpus* act, applies.

The provision itself, in making it the duty of the officer or person holding the prisoner in custody, to deliver him, upon demand, a copy of the warrant of commitment or detainer, under which he holds him, assumes that he is held by virtue of a warrant or process; and must, I think, be construed and understood as applying only to those cases in which the prisoner is arrested and confined by process issued, or which purports to have been issued by a civil magistrate for a supposed criminal offence.

If it had been the intention of the framers of this act to make this provision applicable to all cases of a restraint of personal liberty, instead of adopting the technical phraseology of "a true copy of the warrant of commitment or detainer," they would have directed, in general terms, that where the prisoner was held by a warrant, a copy of the warrant should be delivered; and, in all other cases, a statement in writing of the cause of his detention.

*The case of *Hudson and Wife* v. *Ash*, (1 Str. 167,) seems to sanction this construction. That was an action brought for not delivering a copy of the commitment under this provison of the *habeas corpus* act. The wife of the plaintiff was arrested upon a warrant issued by a justice of the peace. When she came before the justice, she could not find bail; but, at her own request, was permitted to sleep at the house of the constable that night, in order to get bail the next morning. While thus in the custody of the constable, a copy of the commitment was demanded, and not being furnished, the action was brought. *Pratt*, C. J., said there were two questions: 1. Whether the defendant was an officer: and 2. Whether the plaintiff's wife was detained by virtue of a warrant within the meaning of the act; and he held that the defendant was clearly an officer, but that the woman was not in his custody by virtue of any warrant. The warrant, he remarks, was only to bring her before the justice, and was fully executed when she was brought there; and she did not remain with the constable by virtue of *any warrant or commitment;* and, on that ground, non-suited the plaintiff.

In the case of *Huntley* v. *Luscombe*, (2 Bos. & Bull. 530,) the question whether this provision of the *habeas corpus* act, is applicable to commitments of any other kind than such as are made for criminal or supposed criminal matters, was discussed at large by the counsel. But the court decided the case on the ground that the demand of a copy of the warrant of commitment from the defendant was not sufficiently established: and expressed no opinion on the main question. It was contended by Shepherd, Sergt., in behalf of the plaintiff, that the 5th section of the English *habeas corpus* act, which gives the penalty in question, extended not only to those writs of *habeas corpus* which are given by that act; but to all other writs of *habeas corpus* at common law; and that, although a person in execution be not entitled to the writ under the act, yet he is clearly so at common law; and if a copy of the execution be refused to him, he is entitled to the penalty given by the 5th section. But I am not aware that *it has ever been con-

[*252]

tended, that this section was applicable to summary com·
mitments by military officers or tribunals.

The first section of the act of 1818, (ch, 277, p. 298,)
declares, that the several provisions made in the *habeas cor-
pus* act, *for awarding writs of habeas corpus*, shall, in like
manner, extend to all cases where any person, (not being
committed or detained for any criminal or supposed crimi-
nal matter, nor in execution by legal process,) shall be
confined or restrained of his, her, or their liberty, under
any color or pretence whatever.  And the third section
provides, that the original act shall, as respects the penal-
ties for not returning writs of *habeas corpus*, and the remedy
therefor, be deemed and taken to apply and extend to the
cases provided for by this act.

This is declaring, by the strongest possible implication,
that the original act, as respects the penalty for not giving
a copy of the warrant of commitment or detainer, shall not
be deemed to extend and apply to the cases provided for
by the act of 1818.  For it is to be remarked, that the
penalty given in the original act for not returning the writ,
is the same in amount, and imposed by the same section,
which gives the penalty for not delivering a copy of the
warrant of commitment : thus marking the intention of the
legislature, in this respect, to discriminate between the two
cases ; giving the penalty for not returning the writ in all
cases ; but not extending the penalty for non-delivery of
a copy of the warrant of commitment.

It appears sufficiently from the declaration, that the ar-
rest was by virtue of a military order.   All the counts so
state it.

The defendant is, therefore, entitled to judgment upon
the demurrer.

Judgment for the defendant.